■Gaston, J.
The principal question in this ease arises on the motion in arrest of judgment. The -indictment sets forth, that, at a Court of Pleas and Quarter Sessions, held for the county of Cabarrus, on the third Monday of April, 1841, before John Stile, Junior, B. W. Allison, William Bar-ringer and James Young, Esquires, justices qualified by law to hold the said court, “ a certain issue, in due manner *374 joined in said court-, between the State of North Carolina and one Benjamin Erwin, upon a certain indictment depending against the said Benjamin Erwin, for assaulting and beating one Michael Holbrook and for making an affray, came on to be tried by a jury of the county, in due manner sworn and taken for that purpose;” and that “upon the trial of said issue, James Callimore did then and there appear, and was produced as a witness in behalf the said State against the defendant, Benjamin Erwin;” and proceeds to charge that the said James then and there took his corporal oath to testify the truth, the whole truth, and nothing but the truth, upon the said issue, “they the said John Stile, Junior, B. W. Allison, William Barringer and James Young, Esquires, justices aforesaid, then and there having competent authority to administer the said oath;” that a -certain enquiry became material on the trial of the said issue, and that thereupon the said Gallimore did xo.rruptly, maliciously and falsely depose, swear and give in evidence as is therein particularly staled; and then it proceeds to falsify the testimony so given, and to aver that .therein -the said James did commit wilful and corrupt Perjury. The objection to the indictment is, for that it does not distinctly and certainly set forth the facts, which shew that the alleged false oath was taken in a judicial proceeding before a court having-jurisdiction thereof.
It is a general rule,, that every indictment should charge explicitly all the facts and circumstances, which constitute the crime, so that, on the face of the indictment, the court can with certainty see that the indictors have proceeded upon sufficient premises, and afterwards, when these facts and circumstances are confessed or found to be true, can behold upon the record an undoubted warrant for awarding the judgment of the law. According to this rule, the indictment in this case should have averred, as a fact, the finding of an indictment in the County Court of Cabarrus, against Benjamin Erwin, and should have set forth that indictment or so much thereof, as to shew that it charged an offence committed within that county, and of which said court had cognizance; and also have set forth the traverse or plea of the said Benjamin, whereon the issue was joined. Had it done so, *375 it would then have appeared, upon the face of the indictment, whether the alleged false oath was taken in a judicial proceeding before a court having jurisdiction thereof. Nor on common law principles is the want of precision in this matter helped by the averment in the indictment, that the justices, before whom the oath was taken, had competent authority to administer said oath, for this is but the averment of a legal inference and not of a distinct fact, and an averment by the indictors, whose province it is to state facts, and who must leave legal inferences to be drawn by the court.
We believe, therefore, that at common law this indictment must be held insufficient, and the next and chief enquiry is, whether the defects be cured by any statutory provision.
The necessity at common law, in indictments for perjury, of shewing the proceedings, wherein the false oath was taken, caused these indictments to be drawn out frequently with great prolixity, and, by reason of inaccuracies in them, the guilty were occasionally enabled to escape with impunity. To remedy these inconveniences, the British Parliament passed the Statute 23rd George the 2nd. This Statute, though enacted before the Revolution, was not in force in North Carolina; but in 1791 our Legislature incorporated its provisions into the act then passed, entitled “An Act for the punishment of such persons as shall procure or commit any wilful perjury,” (Revised Code, ch. 338, sect. 3d.) By this act it is enacted “that in every presentment or indictment to be prosecuted against any person for wilful and corrupt perjury, it shall be sufficient to set forth the substance of the offence charged upon the defendant, and by what court or before whom the oath or affirmation was taken, (averring such court or such person or persons to have a competent authority to administer the same.) together with the proper averment or averments to falsify the matter or matters wherein the perjury or perjuries is or are assigned, without setting forth the bill, answer, information, indictment, declaration or any part of any record or proceedings, either in law or equity, other than aforesaid, and without setting forth the commission or authority of the court or person or persons before whom the perjury was committed.” The *376 principal effect of this enactment was to substitute in the indictment the general averment of a competent authority to administer the oath in the place of a specific averment of the facts, shewing such authority, and to make the question, whether the oath was or was not taken before a competent jurisdiction, a compound question of fact and law, to be decided by the petit jury under the advice of the court.
Since that act, the' compendious form thereby authorized has been generally adopted, and if that act were yet in force we should have no difficulty in overruling the objection to this indictment. But by the act concerning the Revised Statutes, ratified the 23rd January, 1837, it is declared that all acts and parts af acts theretofore passed, the subjects whereof are revised and re-enacted in the Revised Statutes, are repealed from and after the first-day of January, 1838, with certain exceptions not applying to this matter. The subject of crimes and punishments, and the subject of criminal proceedings are revised in those Statutes, and the first and second sections of the act of 1791 are re-enacted with modifications; but the third section, containing the enactment in question, is omitted. It therefore ceased to be a part of the law of North Carolina, before the present indictment was preferred.
But it is insisted on the part of the State, that the insufficiency or defect in this indictment is cured by the act of 1811, ch. 809, which is re-enacted in the Revised Statutes, ch. 35, sect. 12. This act provides with respect to all indictments that “ it shall be sufficient that an indictment contain the charge against the criminal, expressed in a plain, intelligible and explicit manner, aud that no indictment shall bequashed or arrested for or by reason of any informality or refinement, when there appears sufficient to the court in the face of the indictment to induce them to proceed to judgment.” After the very many adjudications, which have been had on this Statute, it must be regarded as being now completely settled, that it does not supply nor remedy the omission of a distinct averment of any fact or circumstance, which is an essential constituent of the offence charged [See State v Haddock, 2 Hay. 152. Same v Owen, 1 Mur. 152, com *377 mented on in Same v Moses, 2 Dev. 452. Same v Davis, 2 Law Rep. 291. Same v Neese, No. Ca. Term Rep. 270. Same v Brown, 3 Mur. 224. Same v Jim, 1 Dev. 142. Same v Shaw, 2 Dev. 196. Same v Aldridge & Poole, 3 Dev. 201. Same v Fitzgerald, 1 Dev. & Bat. 408. Same v. Enloe & others, 4 Dev. & Bat. 376.] The ground of these adjudications is, that sufficient does not appear to the court in the iace of any indictment to induce them to proceed to judgment, when, in the indictment, they do not see distinctly every fact and circumstance, which make up the crime. Call the defect in the indictment what you may — . a defect of form or a defect of substance — a departure from the good sense or only from the refinement of pleading — if by reason thereof there be this insufficiency in the indictment — the court has no authority to render judgment. And if this settled exposition, of the statute be departed from, we are left without a rule, whereby to decide what defects are and what are not cured by it.
But this defect ought not to be called an informality or refinement. By an informality is understood a deviation, in charging the necessary facts and circdmstances constituting the offence, from the well approved forms of expression, and a substitution in lieu thereof of other terms, which nevertheless make the charge in as plain, intelligible and explicit, language. Such a deviation is always dangerous, but, by means of such a substitution, it may be rendered a mere informality, which is cured by the statute. A refinement is understood to be the verbiage, which is frequently found in indictments, in setting forth what is not essential to the constitution of the offence, and therefore not required to be proved on the trial. The defect here complained of is a defect in the substance of the indictment, in omitting the facts, which shew the oath to have been taken in a judicial proceeding before a competent authority, and substituting there-: for the conclusion of the grand jury that it was so taken.
It has been argued, however, that the act of 1791, although repealed, furnishes a legislative exposition of what is substance, and of course what is informality or refinement in an indictment for perjury, and, therefore, we should recur *378 to it in interpreting and applying upon such indictments the act of 1811. To this argument it has been well answered, that the. act of 1791, does not purport'to give an exposition of what is substance, much less of what is informality and refinement in an indictment, and was passed not with a view to shew the distinction between the former and the latter, but" for an entirely different purpose. Definitions, from the great difficulty of couching them in precise language, are always confessedly dangerous things; bufthe danger of being led into error is inconceivably greater, when- terms are taken for definitions which were not so'd'esigned. In no part of the act of 1791' do we find the terms form, informality, refinement, or any of a similar import. We do indeed find the term “ substance,” but we find it used in such connex-ion and with such exclusions as to shew that it is employed (to adopt the language of Lord Kenyon in Rex v Dowlin, 5 Term, 311,) in contradistinction to detail, and aot-toform or' verbal accuracy. The statute provides that the indictment shall set forth “ the substance of the offence,” but it requires that, in addition thereto, it shall also set forth “by what court, or before whom the oath was taken,” and also shall contain “ the proper averment or averments to falsify the matter or matters, wherein the perjury is assigned.” Will it be contended fora moment that' these additional matters formed no part of the substance — as distinguished from the form — of an indictment for perjury at'common law? If not, upon what ground cari we hold that the other matters, with which the statute dispenses, formed no part of the substance, but were mere matters of form in such an indictment? The purport of the statute is obvious. It was intended to authorize an indictment, in many respects substantially different from that which the common law required — one more summary, less in detail. While the statute remained in force, this summary mode of indictment was sanctioned by law. After the statute was repealed, this mode was'no longer thus sanctioned;. and indictments thereafter found are not good, unless they conform to all the essential requirements of the common law. It may be that the omission in the Revised Statutes of this part of the act of 17,91, occurred from *379 inadvertence or misapprehension. If it be so, and the omission'be an evil, the Legislature can supply the remedy. The opinion of the court upon this point renders it unnecessary to express any upon the other questions raised in the case. This opinion is to be certified to the Superior Court of Ca-barrus, with instructions to arrest the judgment in this case.
Per CuftiAM, Ordered accordingly.